**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| XTO Energy Inc.,<br>and XTO Holdings, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>North Dakota Board of University and School Lands, and the United States of America,<br><br>Defendants. | ) | **ORDER**<br><br>Case No.: 1:19-cv-00076 |

Presently before the court are numerous motions filed by the parties, including a *Motion for Summary Judgment* filed by Defendant United States of America on August 20, 2026, a *Motion for Judgment as a Matter of Law* filed by Plaintiffs XTO Energy Inc. and XTO Holdings, LLC on August 20, 2026, and a *Motion for Summary Judgment* filed by Defendant North Dakota Board of University and School Lands on August 21, 2026. (Doc. Nos. 82, 87, 88). The motions are now ripe for the court's review.

## I. BACKGROUND

The following facts are taken from the parties' motions and associated pleadings. The facts are assumed to be true for purposes of this Order.

Plaintiffs XTO Energy Inc. and XTO Holdings, LLC (collectively "Plaintiffs") commenced the above-entitled action by Complaint on April 29, 2019. (Doc. No. 1). Plaintiffs brought the action for interpleader to determine the rights of Defendants North Dakota Board of University and School Lands, and the United States of America (collectively "Defendants") to royalties on production of oil and gas attributable to portions of properties leased to Plaintiffs that Defendants assert competing rights and interests in. (*Id.* at 1).

Both Defendants filed answers to the Complaint on August 1, 2019. (Doc. Nos. 20, 21). In its answer, Defendant North Dakota Board of University and School Lands provided that while the amount of unpaid royalties[1] is not known and changes monthly, the approximate amount is $3.2 million. (Doc. No. 20 at 10). Defendant North Dakota Board of University and School Lands further requested that judgment be entered dismissing this action and finding it entitled to all royalties due. (*Id.* at 11).

In its answer, Defendant United States of America admitted to claiming rights to the disputed well royalties. (Doc. No. 21 at 6-7). However, it requested that the court dismiss the Complaint in its entirety based on lack of subject matter jurisdiction, sovereign immunity, statute of limitations, and mootness. (*Id.* at 8-9).

On July 20, 2020, the parties entered a Stipulation regarding the deposit of funds. (Doc. No. 50). Therein, the parties identified twelve wells at issue in the instant matter and came to an agreement that Plaintiffs would deposit with Defendant North Dakota Board of University and School Lands' agent, the Bank of North Dakota, funds attributable to production from the wells. As of July 1, 2020, the amount deposited was $3,031,653.74. (*Id.* at 7-8). This amount, plus any additional funds deposited by Plaintiffs with the Bank of North Dakota were to be transferred to the court's registry. (*Id.* at 8).

The court adopted the stipulation in part on November 23, 2020. (Doc. No. 54). The court authorized Plaintiffs to transfer the funds already deposited with the Bank of North Dakota to the court's registry, but required Plaintiffs to obtain court authorization to make a deposit each time there are additional royalties to deposit. (*Id.* at 2).

[1] The unpaid royalties arise from the overlapping land described in the state and United States' leases that Plaintiffs are not paying on until the title regarding overlapping acreage is addressed. (Doc. No. 20 at 9-10).

## II. LEGAL STANDARD

Federal Rules of Civil Procedure 56 governs summary judgment. "A party may move for summary judgment, identifying each claim or defense –or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In terms of whether facts are material, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine," if the evidence is enough that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.*

## III. DISCUSSION

A review of the pending motions reveals that all the parties agree that this interpleader action has run its course and may be concluded. However, the parties disagree on the most appropriate way to resolve this matter.

Defendant North Dakota Board of University and School Lands seeks resolution of its motion for summary judgment by dismissal, arguing this court no longer has jurisdiction based on the Eighth Circuit's decision in the *Continental* litigation. *See Continental v. North Dakota Board of University & School Lands*, 136 F.4th 778 (8th Cir. 2025). Defendant United States of America argues that because the ownership dispute was resolved by the *Continental* litigation, there is no genuine issue of material fact, and it is entitled to summary judgment. Finally, Plaintiffs seek judgment as a matter of law, asserting that while it takes no position on the merits or outcome of the royalties dispute, it seeks to protect its interest in a final, conclusive resolution of the dispute.

Accordingly, Plaintiffs request the court enter final judgment resolving the merits of the Defendants' claims to the oil and gas royalties and to direct the distribution of all amounts on deposit with the court at the time of judgment to the appropriate party or parties.

Turning first to Defendant North Dakota Board of University and School Land's argument that this matter should be dismissed as this court no longer has jurisdiction, the court agrees with both Defendant United States of America and Plaintiffs that jurisdiction is determined at the time-of-filing.

> It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. (Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment.).

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (internal citations and footnotes omitted). The time-of-filing rule is adhered to regardless of the cost imposed. *Id.* "The time-of-filing rule is what is it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful." *Id.* at 580.

Because this court had jurisdiction at the time Plaintiffs filed the Complaint, it retains jurisdiction over this matter, even if there has been a subsequent change as alleged by Defendant North Dakota Board of University and School Lands. As such, this matter shall not be resolved through dismissal, nor does the parties' Stipulation warrant resolution through dismissal. (*See* Doc. No. 50 at 5-6 ("For purposes of this *Stipulation*, this litigation will be considered finally resolved when a final judgment is entered and all applicable deadlines for appeal have expired or the date that any stipulation, settlement, or other agreement resolving the case fully and finally is executed, and if necessary approved by the presiding court.") (emphasis in original)).

The court next turns its attention to Defendant United States of America and Plaintiffs' request for resolution. Both parties agree that there should be a final judgment on the merits, that judgment should be awarded in Defendant United States of America's favor, and that the court direct distribution of the funds deposited in the court registry, but do not agree on where said funds should be distributed.

Both Defendants request the court distribute the funds on deposit with the court back to Plaintiffs. Defendant United States of America specifically requests such a distribution to avoid engaging in an "accounting exercise" where $3,060,527.12 (plus interest) is distributed to it, and then Plaintiffs determine additional royalties due as prescribed in the parties' July 20, 2020, Stipulation. Per the parties' Stipulation:

> Once ownership is finally determined for lands in dispute in this action, XTO will file and amend any United States Department of Interior, Office of Natural Resources Revenue, production (Oil and Gas Operations Reports) and royalty (Form-2014—Report of Sales and Royalty Remittance) reports necessary to reflect the determined ownership within 90 days of the date this litigation is finally resolved, as defined in Paragraph 12 of this *Stipulation.*

(*See* Doc. No. 50 at 5) (emphasis in original). Plaintiffs oppose such a distribution back to it on multiple grounds, including the likelihood that Defendant United States of America will assert a higher claim for interest if the funds were returned to Plaintiffs, who make no claim to the funds, rather than to Defendant United States of America, who do claim the funds, and that such a distribution is at odds with the parties' Stipulation. Notably, Plaintiffs contend that there is no way to avoid an "accounting exercise," because either way they will be required to file amended production and royalty reports upon entry of final judgment as required by the Stipulation, and Defendant United States of America will likely engage in an accounting exercise whether distributed to it by the court or by Plaintiffs. Finally, if the parties intended for the deposited funds to be returned to Plaintiffs upon final resolution of this matter, such a provision likely would have

been included in the Stipulation. Absent such a provision, the funds should be treated no differently than other court deposited funds.

The court agrees with Plaintiffs. No matter what happens to the funds, Plaintiffs are required to file amended production and royalty reports. Moreover, Plaintiffs explicitly state throughout the pleadings that they are not claiming the deposited funds, but as opined by both Plaintiffs and Defendant United States of America, Defendant United States of America does claim the funds. The United States Supreme Court has previously considered money deposited with the court.

> In this case, the money deposited belonged for the time being to the court, and was held as a trust fund pending the litigation. The United States claimed it, but their claim was contested. So long as this contest remained undecided, the officers of the treasury could not control the fund. Although deposited with a bank that was a designated depositary, it was not paid into the treasury. No one could withdraw it except the court or the clerk, and it was held for the benefit of whomsoever in the end it should be found to belong.

*Branch v. United States*, 100 U.S. 673, 674 (1879). The court encounters a similar situation here. While there were initially contested claims to the funds, the parties no longer dispute the funds are claimed by Defendant United States of America. Because there are no longer contested claims to the funds, and the court now finds the funds belong to Defendant United States of America, the funds are being held for Defendant United States of America's benefit.

It makes little sense to honor the requests of Defendants and return the deposited funds to Plaintiffs, only for Plaintiffs to turn around and return the funds to Defendant United States of America, the only party now claiming the funds. The court is further persuaded by Plaintiffs' argument that if it were to return the funds to Plaintiffs, Defendant United States of America would likely seek higher interest for the time the funds are in Plaintiffs' possession.

## IV. CONCLUSION

For the reasons articulated above, the court **GRANTS IN PART** Defendant United States of America's *Motion for Summary Judgment* (Doc. No. 82), **GRANTS** Plaintiffs' *Motion for Judgment as a Matter of Law* (Doc. No. 88), and **DENIES** Defendant North Dakota Board of University and School Lands' *Motion for Summary Judgment.* (Doc. No. 87).

Within fourteen (14) days of this Order, the United States of America shall file, under seal, a document providing the full mailing instructions for the reimbursement check, including the full address and zip code, and a completed IRS Form W-2 or AO-213. *See* D.N.D. Gen. L.R. 1.10(C)(2). No funds will be dispersed until the above information is provided.

Upon receipt of the required documentation, the court is directed to distribute the deposited total of $3,060,527.72, plus interest, less applicable fees and costs, to the United States of America. Pursuant to the parties' Stipulation, Plaintiffs shall file and amend any United States Department of the Interior, Office of Natural Resources Revenue, production and royalty reports necessary to reflect the United States of America's ownership within ninety (90) days of this Order.

**IT IS SO ORDERED.**

Dated this 21st day of October, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court